Judge Underwood,
delivered the opinion of the court.
Lockheart, as obligee, held a note on Hankley for $275, due 10th June, 1820., On the 18th of September, 1818, Lockheart assigned this note to Yankey, for the consideration of $200, then advanced by the latter. Yankey not being willing to part with his money upon the assignment alone, required Lock-heart to give him security, that if Hankley proved insolvent, he, Lockheart, would then pay the amount of the note, on Hankley, to-wit: the $275, to which proposition Lockheart consented; and thereupon executed an obligation with Burton, as surety for the payment of the $275, in the event of Hankley’s insolvency. Upon this obligation Yankey instituted suit, and obtained judgment for $297 60 cents, in June, 1821, having averred in his declaration, the prosecution of suit against Hankley and his insolvency. Lockheart and Burton, therefore, filed their bill, charging usury to the amount of $¡75, and obtained an injunction against that much of the judgment at law, which, upon final hearing, was perpetuated. To reverse the decree, Yankey prosecutes a writ oí error.
If Yankey had taken his recourse against the assignor, Lockheart, the recovery would have been limited to the $200, the consideration actually paid, interest thereon and the amount of costs, expended. These *277 would not have amounted to the judgment recovered. Can Yankey, by a separate contract, independent of the assignment, enlarge Lockheart’s legal responsibility, and thereby, secure to himself, more than legal interest-upon the money advanced? We are of opinion he cannot. To tolerate it, would tend to. destroy the efficacy of the statute against usury, by encouraging shifts and contrivances to evade its salutary provisions. If Lock-heart and Burton had unconditionally agreed to pay Yankey $275, on the 10th of June, 1820, for the $200 advanced, it would have been a plain case of usury, Their agreement to pay it, upon condition that Hankley did not, cannot alter the case in principle. It is only attaining, by indirection, that which cannot be done-directly. The law delights in doing things by a straight forward, open conduct, and sets its face against circuity and management. It was correct, upon the bill filed to grant relief. There is nothing immoral or improper, to a contract made between assignor and assignee, to secure the latter against loss, in consequence of the insolvency of the obligor and assignor both, but such contracts violate the statute against usury, where they attempt to impose a burden, beyond the legal liability, resulting from the assignment. For such excess there is no consideration; there is no risk on the part of him who advances the money. Yankey, in the present case, would make an usurious profit without the danger of loss, were he permitted to recover the full amount stipulated to be paid him, by the covenant; as the. covenant secures usury, and was entered into previous to the passage of'the act of the 6th February, 1819, which act allows six per cent, interest, per annum, on the sum really advanced, although the contract may stipulate for the payment of usury, it was proper to per-¡. petuate the injunction for the whole $75.
Contract be-ancTassigneo,1 by which as-•j1Sg°£n^rfe?![’ solvency of11* obligor in tha assigned- note, tuhnan the consideration, and 6 per thereon,6 ii usurious,
Harlan, for plaintiff; Daviess, for defendants,
Wherefore, the decree is affirmed with costs.